1
2
3    **UNITED STATES DISTRICT COURT**
4    **DISTRICT OF NEVADA**
5

6    MONICA HOEFT                          )
                                            )        3:05-cv-0375-ECR (VPC)
7              Plaintiff,                   )
                                            )
8        vs.                                )    **REPORT AND RECOMMENDATION**
                                            )    **OF U.S. MAGISTRATE JUDGE**
9    JO ANNE BARNHART,                      )
     Commissioner of Social Security        )
10                                          )
               Defendant.                   )        February 1, 2007
11   _____   )

12
13        This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., United
14   States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to
15   28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is plaintiff's motion for remand (#21).
16   Defendant opposed and filed a cross-motion for summary judgment (#25).  Plaintiff opposed
17   defendant's cross-motion and filed a reply to defendant's opposition (#27).  The court has
18   thoroughly reviewed the parties' pleadings and the administrative record ("AR") and finds that
19   the record as a whole supports the ALJ's determination that the plaintiff's testimony was not fully
20   credible. The ALJ properly credited the portions of the medical evidence that he thought credible,
21   as it is the ALJ's role to make such determinations.  The ALJ properly relied on his findings
22   regarding the medical and other evidence to determine the plaintiff's RFC.  Finally, the ALJ did
23   not need to obtain vocational expert testimony because the ALJ did not find that plaintiff's one
24
25   non-exertional limitation would "significantly" affect the plaintiff's ability to work.  For the
26   reasons set forth below, the court recommends that the plaintiff's motion for remand (#21) be
27   denied and defendant's cross motion for summary judgment (#25) be granted.
28

1

## I.  ADMINISTRATIVE PROCEEDINGS

Plaintiff Monica Hoeft ("plaintiff") filed an application for Social Security disability insurance benefits on August 26, 2002 (AR 56-59).  Plaintiff alleges disability based on various mental impairments, including depression, bipolar disorder, agoraphobia, post-traumatic stress disorder, anxiety, panic attacks, and blackout spells (#21, pp. 14-16).  Plaintiff's claim was denied initially (AR45-48) and on reconsideration (AR50-54).  Plaintiff requested a hearing, and on June 15, 2004, plaintiff testified before Administrative Law Judge ("ALJ"), Mark C. Ramsey (AR 223-251 (transcript)).  The ALJ found the plaintiff not disabled on August 12, 2004 (AR 21-34).  Plaintiff requested administrative review (AR 18), but the Social Security Administration Appeals Council ("Appeals Council") denied review on March 25, 2005 (AR 13-15).  Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on July 25, 2005 (#5).  Plaintiff requests that this court issue an order reversing the decision of the ALJ, or in the alternative, remand the case for a new hearing (#21, p. 27).

## II.  BACKGROUND

Plaintiff was born on August 22, 1958, and was forty-five years old at the time of her hearing (AR 225).  Plaintiff has a high school education, a two-year degree in electronics, and at the time of the hearing, was enrolled in a law school Internet program through Saratoga University School of Law (AR 226-227).  Plaintiff's last employment was as an assistant to attorney Thomas Hall from September through November 2002 (AR 232-233).[1]  Her past work experience includes line maintenance on optical equipment, a retail clerk in a fabric store, and a drink-server in Taco John's restaurant (AR 231-232).  Plaintiff alleges that she became disabled on November 3, 2000 due to "severe clinical depression" (AR 56).

---

[1] The ALJ concluded that the small amount of earnings from plaintiff's position as an attorney's assistant did not constitute substantial gainful activity (AR 26).

The ALJ in the present case found the plaintiff not disabled at step five because he found the plaintiff capable of performing all levels of physical work that do not involve frequent contact with the public (AR 32).  Specifically, the ALJ made the following findings:

1.  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.  The claimant's major depressive disorder and bipolar disorder are considered "severe" based on the requirements of 20 CFR §§ 404.1520(c).

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.  The claimant retains the residual functional capacity to preform, on a regular and continuing basis, work at all levels of physical exertion that does not involve frequent interaction with the public.

7.  The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565).

8.  The claimant is a "younger individual between the ages of 45 and 49" (20 CFR §§ 404.1563).

9.  The claimant has "more than a high school (or high school equivalent) education" (20 CFR §§ 404.1564).

10.  The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568).

11.  Considering the range of work at all physical levels of exertion that the claimant is still functionally capable of performing, in

3

1    combination with her vocational factors and using section
2    204.00 of the medical-vocational guidelines as a framework
     for decision-making, the claimant is not disabled.

3    12.    The claimant was not under a "disability" as defined in the
4           Social Security Act, at any time though the date of this
            decision (20 CFR §§ 404.1520(f)).
5
6    (AR 33-34).

7    ## III.  STANDARD OF REVIEW

8            The court must uphold the decision of an administrative law judge if the ALJ properly

9    applied the correct legal standards and his findings of fact are supported by substantial evidence

10   in the record.  *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); 42 U.S.C. § 405(g).

11   "Substantial evidence" has been defined as "relevant evidence which a reasonable person might

12   accept as adequate to support a conclusion."  *Matthews v. Shalala,* 10 F.3d 678, 679 (9th Cir.

13

14   1993); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence is more

15   than a mere scintilla but less than a preponderance.  *See Jamerson v. Chater*, 112 F.3d 1064, 1066

16   (9th Cir. 1997), *citing Smolen*, 80 F.3d at 1279.  "To determine whether substantial evidence exists

17   [the court must] look at the record as a whole, considering both evidence that supports and
18
     undermines the ALJ's findings.  However, if the evidence is susceptible of more than one rational
19
20   interpretation, the decision of the ALJ must be upheld."  *Orteza v. Shalala*, 50 F.3d 748, 749 (9th

21   Cir. 1995) (citations omitted).  The ALJ alone is responsible for determining credibility, and for

22   resolving ambiguities.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

23
             The SSA defines disability as "the inability to engage in any substantial gainful activity by
24
25   reason of any medically determinable physical or mental impairment which . . . has lasted or can

26   be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A)

27   (2004).  A claimant is considered disabled "only if his physical or mental impairment or

28

4

impairments are of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to the Act, the Secretary has adopted regulations which establish a formalized, five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The Administrative Law Judge considers: (1) whether the person is engaging in substantial gainful activity; (2) severity of the alleged impairment; (3) whether the impairment meets or equals a listed impairment and meets the duration requirement; (4) whether the individual is capable of doing work he or she has done in the past; and (5) whether the impairment prevents the person from doing any other work. *Id.* If at any point in the five-step inquiry it is determined that a claimant is or is not disabled, further review is unnecessary.

## IV.  ANALYSIS

Plaintiff challenges the ALJ's findings on the following grounds: (1) the ALJ failed to consult a vocational expert ("VE"); (2) the ALJ failed to apply the *Singletary* standard to plaintiff's case; (3) the ALJ failed to consider the impact of the plaintiff's non-exertional impairments in determining her residual functional capacity ("RFC"); (4) the ALJ failed to provide adequate reasoning for rejecting the non-examining and consulting psychologists' opinions; (5) the ALJ failed to credit all of the plaintiff's treating physician's opinion; and (6) the ALJ failed to consider how the side effects of the plaintiff's medications will impact plaintiff's ability to work (#21). In her reply, plaintiff additionally challenges the ALJ's finding that she is not credible (#27, p.7).

Defendant's position is that the ALJ's decision is supported by substantial evidence and

5

is free of legal error (#25, p. 4).[2]

### A. Residual Functional Capacity

The regulations define residual functional capacity ("RFC") as the most a plaintiff can still do despite her physical, mental, non-exertional, and other limitations. 20 C.F.R. § 404.1545; *see also Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998). If, in determining the plaintiff's RFC, the ALJ applied the proper legal standards and his decision is supported by substantial evidence in the record, the court will affirm the ALJ's findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Plaintiff asserts that in cases in which the RFC assessment differs from the medical evidence, the ALJ must explain why the opinion was not adopted (#21, p. 22). Plaintiff argues that the ALJ failed to consider the required four factors regarding mental functioning and give a rationale or a reference to the supporting evidence when he determined her RFC. *Id.* Additionally, plaintiff contends that the ALJ did not consider whether plaintiff was capable of working a full-time work week, considering her insomnia and the "sometimes competitive and stressful environment of the working world" (#21, pp. 23-24).

Defendant notes that the ALJ found that the plaintiff had enrolled in an Internet law school program in July 2000 (#25, pp. 4-5). Although plaintiff was on track to complete the program as of her hearing date, plaintiff applied for disability benefits in July 2002, claiming disability as of

---

[2] Defendant argues that many of plaintiff's factual assertions in her motion (#21) are not supported by the evidence in the record, including plaintiff's assertion that the ALJ's found that she needed to change positions every thirty minutes during a work day, that she can only sit and stand for two hours at a time, and that she is limited to "low-stress" work (#25, p. 3). Additionally, certain conditions plaintiff allegedly suffers from, such as post-traumatic stress disorder, agoraphobia, restless leg syndrome, a recent seizure and frequent decompensation are not supported by the record. *Id.* Defendant contends that these statements are material inaccuracies and that the court should disregard them. *Id.* The court addresses these issues below.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

November 2000, four months after beginning law school. *Id*. The ALJ also found that the plaintiff began working for an attorney in September 2002, performing legal research and writing, and that plaintiff reported to her treating physician, Dr. Chen, in October 2002, that she was "usually high functioning" as a law student and as an attorney's assistant. *Id*. at 5. Defendant asserts that these facts are more than enough to support the ALJ's finding that the plaintiff has the capacity to work despite her mental impairments.[3] *Id*. Additionally, despite plaintiff's claim to the contrary, defendant points out that the ALJ *did* address the four categories of mental functioning as required pursuant to 20 C.F.R. § 404.1520a. *Id*.; *see* AR 26-27. The ALJ determined that the plaintiff had only "mild" restrictions in her daily living because, in addition to studying and attending law school, plaintiff cared for her personal needs, occasionally shopped and went to restaurants, drove and moved independently in her community, watched soap operas, performed some household chores, attended her children's school activities and sporting events, and corresponded with friends on the Internet. *Id*. In addition to these findings, defendant asserts that the ALJ based his conclusions on the medical evidence, which indicated that while the plaintiff has moderate difficulties in social functioning and problems interacting with others and the general public, the record did not document any evidence of decompensation for extended periods of time. *Id*. at 7. The record also demonstrated that plaintiff responded well to her medications. *Id*.

Plaintiff replies that the mere fact that she is able to carry on certain daily activities should not detract from her credibility as to her overall disability and that a claimant need not be "utterly incapacitated" to be disabled (#27, p. 8, *citing Vertigan v. Halter*, 260 F.3d 1044 (9th Cir. 2001)).

26
27
28

---

[3] Defendant questions in a footnote why the plaintiff would continue attending an advanced degree program that costs $4,000 per year, while claiming she is unemployable (#25, p. 5, n. 4). Defendant asks "why continue paying and training for a career if you cannot 'work'?" *Id*. The court agrees with the defendant and the ALJ that these facts certainly create a question as to the plaintiff's credibility. *See infra*, pp. 7-9.

Additionally, plaintiff contends that just because she is feeling better on medication does not mean she is not disabled, and that she told Dr. Chen that she felt "a lot" better because her symptoms had been "so bad," that feeling even a little better felt like "a lot" (#27, pp. 9-10).

### 1. Plaintiff's Credibility

The ALJ found plaintiff "not fully credible" (AR 30), which plaintiff challenges in her reply (#27, p. 7).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). If the ALJ rejects the claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). If a claimant produces medical evidence of an impairment, the ALJ may not discredit the claimant's testimony as to the severity of the symptoms merely because they are unsupported by objective medical evidence. *Reddick*, 157 F.3d at 722, *citing Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*). "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" *Lester*, 81 F.3d at 834. The ALJ must identify what specific evidence undermines the plaintiff's complaints. *Id*.

The ALJ found the plaintiff's subjective complaints and alleged limitations were not fully supported by the evidence (AR 30). Plaintiff alleged an inability to work since November 2000, however, in July 2000, plaintiff enrolled in a four-year Internet law school program through Saratoga University School of Law. *Id*. The plaintiff testified at her hearing that she was in her fourth and final year of law school with an anticipated graduation of January 2005. *Id*.; *see also* AR 227, 229. The ALJ found that the fact that plaintiff was on target to complete an advanced degree program within or near the time frame of the program contradicted plaintiff's contention

in her disability reconsideration report that she is not able to follow through with things (AR 30). The ALJ summarized the medical evidence from various physicians, which indicated the plaintiff was doing well and responding to medications, could understand and carry out simple instructions while maintaining concentration, had intact attention, memory, insight and judgment, and was above-average in learning ability (AR 30-31).  Most notable, however, the plaintiff testified at her hearing that beginning in September 2002, almost two years after the alleged onset of her disability, she became employed as an assistant to an attorney to research and write legal briefs (AR 31).  This position lasted three months.  *Id*.  The ALJ noted that the plaintiff told Dr. Chen that she was generally high functioning at work as a law student and as an attorney's assistant.  *Id*. Additionally, the plaintiff was reported to be "doing wonderfully" on Prozac in March 2001 (AR 30).

The court finds the ALJ's credibility determination well-supported by substantial evidence, which is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  *Matthews v. Shalala,* 10 F.3d 678, 679 (9th Cir. 1993).  The ALJ gave specific reasons to reject the plaintiff's subjective symptom testimony, such as that it conflicted with her physicians' treatment notes and the evidence of her daily activities.  Largely, however, the ALJ relied on the fact that the plaintiff had enrolled in, attended and nearly completed a law school degree during the time she was allegedly disabled.  The court is well aware of the rigors of law school and the concentration and attention required by such an undertaking.  Further support for the ALJ's credibility determination is the fact that plaintiff has made conflicting statements regarding the symptoms of her bipolar disorder, testifying at her hearing that her depressive/manic cycles were monthly in that she was depressed for two weeks, then manic for two weeks (AR 244) but telling Dr. Chen that her depressive/manic cycles were weekly, in that she switched every few

days (AR 146).  The plaintiff also testified that she had no friends (AR 239), but then submitted a third-party daily activities questionnaire completed by a friend, Laura Link, who states she has know the plaintiff for more than two years and visits her frequently (AR 90-95).[4]  All of the foregoing indicates to the court some evidence of malingering regarding the severity of plaintiff's symptoms.  The court concludes that the ALJ identified specific evidence that undermined the plaintiff's claims and gave clear and convincing reasons to reject portions of the plaintiff's subjective symptom testimony.  *See Lester,* 81 F.3d at 834.

### 2. Medical Opinions of Plaintiff's Physicians

Cases within the Ninth Circuit distinguish between the opinions of (1) treating physicians, (2) examining physicians, and (3) non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, the opinions of treating physicians are afforded greater weight than the opinions of other physicians because treating physicians "are employed to cure and thus have a greater opportunity to know and observe the patient as an individual...."  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).  "A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record."  *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) *citing* SSR 96-2p.

The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted, *Magallenes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989); however, an ALJ may not reject the treating physician's opinion if it is contradicted by other physicians' opinions unless the ALJ "makes findings setting forth specific, legitimate reasons for doing so that are based on

---

[4] Plaintiff contends that Ms. Link is not her friend, but merely an acquaintance of her husband (#21, p. 17).  As defendant points out, this claim is inconsistent with Ms. Link's own report.  The statement also appears to the court to be self-serving.

substantial evidence in the record." *Id.*, *quoting Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *see also Lester,* 81 F.3d at 830. "If the treating physicians' opinions are uncontroverted, those reasons must be clear and convincing." *Smolen*, 80 F.3d at 1285.

The opinion of an examining physician is, in turn, entitled to more weight than that of a non-examining physician. *Lester*, 81 F.3d at 830. The ALJ must provide clear and convincing reasons to reject the uncontradicted opinion of the examining physician, and "specific and legitimate" reasons if the examining physician's opinion is contradicted by that of another doctor. *Id.* at 830-31.

### (a) Dr. Rogina

Plaintiff contends that the ALJ failed to explain the amount of weight accorded to Dr. Rogina's opinion (#21, p. 12). Defendant argues that the ALJ properly explained why Dr. Rogina's opinion that plaintiff was capable of only "simple" one or two-step work is not supported by the record (#25, p. 8).[5]

Dr. Rogina is an examining physician to whom plaintiff was referred by the Bureau of Disability Adjudication (AR 120-125). Dr. Rogina obtained information contained in the report from an interview with the plaintiff (AR 120). Dr. Rogina noted the plaintiff had slow speech and movement and that her hair was greasy and unkempt (AR 122). However, Dr. Rogina also stated that plaintiff's overall appearance was "clean and casual," she appeared attentive and alert, she responded to questioning appropriately, her stream of thought was rational, logical and goal oriented, and there were no signs of confusion. *Id.* The plaintiff reported her daily activities as

---

[5] Defendant asserts that further evidence that plaintiff is capable of more than simple one or two-step work is that plaintiff is representing herself in this appeal, and the process involved in writing and filing briefs before this court is more than a "simple" one or two steps (#25, p. 8, n.6). Plaintiff responds that her husband is assisting her in much of the manual filing and in her legal research as her "concentration is down to about an hour every day or so" (#27, p. 11).

rising at 5 a.m., having some coffee and taking a bath, spending time on the Internet looking at email and studying for her law classes, and watching soap operas (AR 123).  Plaintiff reported to Dr. Rogina that she does not socialize with friends and does not go to meetings or attend clubs, and that she was "putting all [her] energies into finishing [her] law degree" (AR 124).  Dr. Rogina concluded that the plaintiff's attention and concentration were sufficient to carry out simple one or two-step tasks, her "ability to sustain employment over a period of time appears limited," and the "severity of her mood disorder makes her prognosis guarded."  *Id*.  Dr. Rogina diagnosed "major depressive disorder, recurrent, partially in remission," and gave plaintiff a GAF rating of 45 (AR 125).[6]

The ALJ noted that Dr. Rogina found the plaintiff rational, logical and goal-oriented, that the plaintiff could understand, remember and carry out simple instructions (AR 31).  However, the ALJ noted that plaintiff's law school attendance and studying and her above average ability to learn was inconsistent with Dr. Rogina's finding that the plaintiff could only complete simple instructions.  *Id*.

The court concludes that the ALJ's reasoning for rejecting the portion of Dr. Rogina's opinion that states plaintiff is capable of only simple-step work is clear and convincing.  The plaintiff has studied law for the past three to four years on the Internet, and she is therefore capable of completing complex instructions and work.  Moreover, the court notes that the plaintiff's credibility regarding her subjective symptoms was discredited, and Dr. Rogina based his opinion mainly on an interview with plaintiff.  Since the ALJ is responsible for resolving ambiguities and determining credibility, *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), the court

---

[6] "GAF" is short for "Global Assessment of Functioning."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217, n.3 (9th Cir. 2005).

declines to overturn the ALJ's determination.  *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld).

### (b) Dr. Chen

Plaintiff argues that the ALJ failed to accord adequate weight to her treating physician's opinion because the ALJ's determination "selectively relied on portions of this opinion without explaining why all of the opinion was not accepted" (#21, p.10).  Plaintiff also contends that the ALJ erred in failing to contact the plaintiff's treating physician as required by the regulations.  *Id.*, *citing* 20 C.F.R. § 404.1512(e).  The ALJ also failed to consider the certain factors such as the length of treatment, frequency of examinations, nature and extent of the treatment relationship, support of opinion afforded by medical evidence, consistency of opinion with the record as a whole and specialization of the treating physician.  *Id.*, *citing* 20 C.F.R. § 404.1527.  Defendant asserts that plaintiff "fails to identify a 'treating physician;'" nevertheless, the ALJ addressed the findings of all doctors in the record and therefore, did not err (#25, p.9).  In her reply, plaintiff identifies her treating physician as Dr. Chen (#27, p.6).

Dr. Chen diagnosed plaintiff with bipolar disorder in October 2002 (AR 29).  Dr. Chen found that while the plaintiff was mildly anxious, she was "alert and oriented," and seemed intelligent, engaging in sensible and logical conversation.  *Id.*  Dr. Chen reported that the plaintiff told him that she had a high energy level and is usually high functioning at work as a law student and an attorney's assistant.  *Id.*  Dr. Chen increased the plaintiff's Prozac dosage and reported that the plaintiff was doing well.  While Dr. Chen diagnosed the plaintiff with schizoaffective disorder in February 2004, he noted that the plaintiff had failed to take her medications for the three days prior to that diagnosis.  *Id.*  Plaintiff was prescribed a number of medications at this time,

including Trazodone, Tegretol, Wellbutrin, and Seroquel.  *Id.*  In March 2004, the plaintiff reported that she was better and that it was the best combination of medications she had been on in years.  *Id.*

As in the case of Dr. Rogina, the court concludes that the ALJ's reasoning for adopting certain portions of Dr. Chen's opinion is clear and convincing.  First, plaintiff argues that the ALJ failed to contact Dr. Chen, however, there is no indication that this was necessary or that Dr. Chen's information was inadequate.  *See* 20 C.F.R. § 404.1512(e) ("when the medical evidence we receive from your treating physician... is inadequate for us to determine whether you are disabled, we will need additional information" which will be obtained by "recontact[ing] your treating physician").

Plaintiff additionally argues that the ALJ "picked-and-chose [sic] what GAF he wanted to use" (#21, p. 19).  Plaintiff notes that the ALJ discounted Dr. Rogina's low GAF because the plaintiff studied law; however, the plaintiff argues, she was doing poorly in her studies, studied only during her "manic" periods, and slept during her depressive periods (#27, p. 10).  Plaintiff argues that Dr. Rogina saw the plaintiff for one hour during one of her depressive cycles, a meeting plaintiff contends she "barely remembers."  *Id.*  Plaintiff also argues that she saw Dr. Chen only for an average of twenty minutes each time in a period of two to three months.  *Id.*  Defendant responds that the ALJ cited Dr. Chen's GAF rather than Dr. Rogina's GAF, which was lower, because Dr. Chen's GAF was more recent and because Dr. Chen is a specialist, and an ALJ is entitled to accord more weight to a specialist who has opined on her area of expertise (#21, p.8).  Defendant notes that an ALJ does not have to address every piece of evidence in the record and, therefore, it was permissible for the ALJ to choose Dr. Chen's GAF.  *Id.*, *citing* 20 C.F.R. § 404.1527(d)(5).

14

1

2
    Plaintiff's main complaint appears to be that the ALJ did not choose to credit the portions

3
of Dr. Chen's opinion that plaintiff would have credited.  Plaintiff fails to point out to the court

4
which portions of Dr. Chen's opinion she thinks the ALJ *should have* credited.  Plaintiff is

5
inconsistent; on the one hand, plaintiff argues that the ALJ should have credited all of Dr. Chen's

6
opinion because he was her treating physician (#21, p. 10).  On the other hand, plaintiff asserts that

7
the ALJ should not have accorded weight to Dr. Chen's GAF rating, and argues that she saw Dr.

8
Chen on a very limited basis, and as such, appears to contend his opinion is not reliable (#27, p.

9
10).

10

11
     A review of the ALJ's opinion reveals that the ALJ relied mainly on Dr. Chen's opinion

12
– the ALJ found that Dr. Chen's treatment notes indicated that plaintiff was responding well to her

13
medication and had reported that she was high functioning at law school and as an attorney's

14
assistant (AR 31).  While different doctors may disagree about the plaintiff's level of functioning,

15
if the evidence can reasonably support either confirming or reversing the ALJ's decision, the court

16
may not substitute its judgment.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The ALJ

17
chose to credit plaintiff's treating physician's opinion and GAF over plaintiff's examining

18
physician's GAF; therefore, the ALJ correctly applied the law.  *See Lester v. Chater*, 81 F.3d 821,

19
830 (9th Cir. 1995)(the plaintiff's treating physician's opinion is accorded the most weight).

20

21
### (c) Dr. Zodney

22

23
    Defendant states that the ALJ properly rejected Dr. Zodney's functional capacity report

24
because Dr. Zodney admitted that the findings were based on plaintiff's "self-report" (#25, p. 9).

25
The court agrees.  Dr. Zodney's functional capacity report states at the end that the assessment was

26
actually the plaintiff's own "self-ratings" (AR 195-197).  A physician's opinion may be properly

27
rejected if it is "premised to a large extent upon the claimant's own accounts of [her] symptoms

28

15

and limitations" and the plaintiff's complaints have already been "properly discounted." *Morgan v. Commissioner of Soc. Security Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). As noted above, plaintiff's complaints were previously discounted.

Therefore, viewing the medical evidence as a whole, the court concludes that there is substantial evidence in the record to support the ALJ's determinations regarding all of the plaintiff's treating and examining physicians. Since the ALJ alone is responsible for determining credibility, and for resolving ambiguities in the medical and other evidence, *see Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999), and the ALJ properly applied the law, this court will not substitute its judgment. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

### 3. Medications

The plaintiff argues that the ALJ failed "to even discuss, let alone consider, the side effects from the claimant's many medications on his/her ability to work" (#21, pp. 12-13, *citing* SSR 96-7p and 20 C.F.R. § 404.1529(c)(3)(iv)). Defendant's position is that the plaintiff did not identify the side effects which she claims are a problem, and she cited no medical records in which her physicians addressed any side effects (#25, p. 9). Plaintiff responds that her medication makes her "slow," and that she was unable to voice this at her hearing because of the "slowness in her motor function" (#27, p. 12).

The ALJ did consider the side effects of plaintiff's medications. The ALJ cited to the plaintiff's treating physicians's treatment notes which indicated that while the plaintiff was experiencing some side effects from her medications, such as drowsiness, plaintiff was "doing wonderfully" (AR 115) in 2001 and reported in 2004 that her new medication was "the best combination of meds for years" (AR 190).

Thus, the question is taking into account all of these issues – the plaintiff's credibility and

the medical and other evidence – whether the ALJ properly determined the plaintiff's RFC?  The court concludes he did.  The plaintiff contends that the only consideration at step five is whether the claimant has the "ability to do fill-time work," which means "8 hours a day, for 5 days a week or an equivalent work schedule" (#21, p. 25, *citing* SSR 96-8p).  The court concluded above that the ALJ clearly based his determination only on evidence he found credible.  Although plaintiff asserts that the ALJ failed to give a rationale or a reference to the supporting evidence when the ALJ determined her RFC, this is simply not true.  The ALJ specifically noted the reasons supporting his RFC determination that the plaintiff was capable of working, citing to the plaintiff's treating physician's opinion that the plaintiff responded well to medications and was high functioning during law school and working for an attorney.  Plaintiff claims that the ALJ failed to consider whether plaintiff was capable of working a full-time work week, considering her insomnia and medication's side effects.  However, the ALJ indeed considered such issues – he concluded that the plaintiff's assertions regarding her ability to work were not fully credible and that her subjective complaints were not supported by the record of her daily activities, which included attending law school and working for an attorney during her period of alleged disability.  The court concludes that the ALJ properly applied the law to determine the plaintiff's RFC, which is supported by substantial evidence in the record; therefore, this court will not overturn the ALJ's RFC determination.

### B. Vocational Expert Testimony

Claiming that the ALJ found she has non-exertional limitations such as deficiencies of concentration, persistence and pace and that she is limited to a "low-stress" job, the plaintiff argues that the ALJ should have obtained VE testimony instead of relying on the Medical-Vocational Guidelines (the "Grids"), because the Grids do not address her non-exertional impairments (#27,

p. 3).[7]  Defendant asserts that the ALJ found only one limitation – plaintiff's limit on frequent

contact with the public– and properly found plaintiff capable of unskilled work, which "ordinarily

involves dealing primarily with objects, rather than with data or people" (#25, p. 10).  Defendant

notes that the Grids are applicable only when non-exertional limitations significantly reduce the

unskilled job database or fail to completely describe the claimant's abilities and limitations.  *Id.*,

*citing* SSR 86-15 and *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000).

The Grids are a series of tables used to determine disability, which take certain factors into

account, such as the claimant's age, education, work experience and residual functional capacity.

*Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986).  However, regulations make allowances

for claimants who have limitations that the Grids do not consider by requiring the ALJ to consider

those individuals' particular limitations.  *Desrosiers v. Sec. of Health and Human Servs.*, 846 F.2d

573, 576-77 (9th cir. 1988).  For claimants with significant non-exertional impairments, the

application of the Grids are not appropriate.  *Id.* at 577.  Yet, "the fact that a non-exertional

limitation is alleged does not automatically preclude application of the Grids.  The ALJ should first

determine if a claimant's non-exertional limitations *significantly* limit the range of work permitted

---

[7] Plaintiff claims that the ALJ found she was subject to a sit/stand limitation and therefore, the ALJ should have consulted a VE (#21, p. 9; 27, p. 4).  Defendant asserts that the ALJ made no such finding (#25, p. 3).  Plaintiff responds that the ALJ was in "no position" to see the plaintiff "in her normal surroundings, where she wanders throughout the house constantly and cannot focus on one particular item at a time," and asserts that the ALJ must consider her subjective complaints (#27, p. 5).  The ALJ did consider plaintiff's subjective complaints and found them not fully credible because they were not supported by the evidence in the record (AR 30).  The ALJ did not make any findings regarding the plaintiff's ability to sit or stand; indeed, the record shows that this issue was not even before the ALJ.  Therefore, the court will disregard the plaintiff's argument.

Plaintiff further claims that she has agoraphobia and post-traumatic stress disorder and that the ALJ should have considered these ailments in determining her RFC.  The ALJ did consider plaintiff's contention that she had these impairments and rejected them (AR 26) ("Although the claimant also alleged that she has agoraphobia and post-traumatic stress disorder (PTSD), no actual diagnosis for either of these disorders has been made by a medical doctor").  After review of plaintiff's medical records, the court finds that the ALJ's opinion is well-supported.

by his exertional limitations." *Id*. (emphasis added).  The Ninth Circuit has held that the ALJ need not allow a claimant to circumvent the Grids' application "simply by alleging the existence of a non-exertional impairment... validated by a doctor's opinion that such an impairment exists." *Id*.

Review of the ALJ's determination establishes that the ALJ found that the plaintiff had only one non-exertional limitation, which was that she had moderate difficulties interacting appropriately with the general public (AR 31).  The ALJ noted all of the evidence before the court – the plaintiff's positive responses to her medication between 2000 and 2004, her law school attendance and study schedule, her assertions of disability while she was working for an attorney in 2002, her "above-average" ability to learn, her "intact attention, concentration, memory, insight, and judgment," and her report to Dr. Chen that she was normally high functioning at work and while studying – and found "it is reasonable to conclude that she would currently be functioning at least as well or better since she is receiving great benefit from her medication." *Id*.  The ALJ noted that if the claimant's non-exertional limitations "do not significantly compromise the ability to perform work at all exertional levels," a finding of not disabled is proper (AR 32).  Considering her age, education, and relevant past work experience, the ALJ found the plaintiff could perform unskilled work that does not involve frequent interaction with the public because unskilled work primarily involves dealing with objects rather than people. *Id*.  Importantly, the ALJ *did not* conclude that the plaintiff's non-exertional limitation of infrequent interaction with the public "significantly" limited the plaintiff.  Therefore, the ALJ properly applied the Grids to the plaintiff's claim, and there was no need to obtain VE testimony.

**C. *Singletary* Standard**

Finally, plaintiff argues that the ALJ failed to apply the *Singletary* standard to her case. In *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986), the Fifth Circuit stated, "A finding that

a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." The Ninth Circuit has adopted this reasoning. *See Gatliff v. Commissioner of Social Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999) ("We are persuaded by the reasoning of our sister circuits that substantial gainful activity means more than merely the ability to find a job and physically perform it; it also requires the ability to hold the job for a significant period of time."); *see also Carlson v. Shalala*, 841 F.Supp. 1031, (D. Nev. 1993) (citing *Singletary* for the proposition that the issue is not whether the claimant can physically perform a job, but whether the claimant could hold a job for a period of time). The Ninth Circuit noted that the Social Security Administration considers jobs that end within three months of employment "unsuccessful work attempts." *Id.*, *citing* SSR 84-25. Further, the court stated, "Where it is established that the claimant can hold a job for only a short period of time, the claimant is not capable of substantial gainful activity. ... Although we do not purport to define exactly how long a period of employment must last to be considered "significant," a job of two-months' duration is certainly insufficient." *Id.*

As plaintiff points out in her reply, the defendant does not address the plaintiff's position that the *Singletary* standard applies. Plaintiff contends that the ALJ failed to address the way her sleep problems would affect her work schedule and that "there is no employer that plaintiff knows of that would be able to work around plaintiff's schedule of depression, since it comes on a irregular basis" (#21, pp. 8, 25).

The ALJ discredited the plaintiff's subjective complaints regarding the severity of her impairments because the complaints were belied by the fact that plaintiff was able to complete four

years of law school while claiming disability.  Although plaintiff asserts that she only works when she is in her manic phase, she testified that she sometimes completed her final exams in her depressive phase; she argues that she had to do so because that was the phase she was in when the tests arrived (AR 245).  She testified that she was likely to graduate in January 2005 and that she was passing her course work, albeit, with a low grade (AR 240).  Therefore, contrary to her contentions, plaintiff appears to be capable of occasionally completing work in her depressive phase (AR 240).  The plaintiff testified that she worked the recommended "full eight hours a day, the first year" (AR 241); however, the court notes that plaintiff's first year of law school (2000-2001) was when plaintiff applied for disability benefits alleging she was incapacitated by her depression.  The ALJ found that the plaintiff reads extensively, and after watching television, is able to recall programs and debate the issues presented (AR 27).  Plaintiff is also computer literate and spends parts of her day emailing friends and researching legal issues.  *Id*.

Although the ALJ did not specifically reference the *Singletary* standard, the ALJ determined that the plaintiff was capable of sustained work, relying notably on the above factors.  The court concludes that the evidence in the record supports the ALJ's finding that the plaintiff is capable of working a sustained schedule.

## V.  CONCLUSION

Based on the foregoing, the court concludes that the record supports the ALJ's determination that the plaintiff's testimony was not fully credible.  The ALJ properly credited the portions of the medical evidence that he thought credible, as it is the ALJ's job to make such determinations, and he gave legally sufficient reasons for his conclusions.  The ALJ properly relied on his findings to determine the plaintiff's RFC.  Finally, the ALJ did not need to obtain vocational expert testimony because, although the plaintiff has one non-exertional limitation, the ALJ did not

find that limitation would "significantly" affect the plaintiff's ability to work; therefore, application of the Grids was appropriate.  The court recommends that the plaintiff's motion for remand (#21) be denied and defendant's cross motion for summary judgment (#25) be granted.

The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)© and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the plaintiff's motion for remand (#21) be denied and defendant's cross motion for summary judgment (#25) be granted.

.

**DATED:** February 1, 2007.

*Valerie P. Cooke*

_____

**UNITED STATES MAGISTRATE JUDGE**